THE PEOPLE OF THE STATE OF NEW YORK ex rel. VILLAGE OF CHATEAUGAY, Relator, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

NEW YORK STATE ELECTRIC AND GAS CORPORATION, Intervenor.

Third Department, May 23, 1930.

*Thomas J. Fitzpatrick* [*Patrick J. Tierney* of counsel], for the relator.

*E. B. Naylon* [*Frank Irvine* of counsel], for the intervenor.

HINMAN, Acting P. J. This is a certiorari to review a determination of the Public Service Commission granting a certificate of necessity or convenience for the exercise by Eastern New York Electric and Gas Company, Inc. (now succeeded by New York State Electric and Gas Corporation, which we shall term the electric company), of a franchise granted by the trustees of the village of Chateaugay, Franklin county, to J. O. Smith on March 27, 1899, and assigned to a predecessor of said electric company in November, 1927. It is conceded that no rights or privileges granted by the Smith franchise, as we shall term it, have ever been exercised by Smith or his representatives or their assigns.

The village opposed the granting of a certificate of necessity or convenience by the Commission on the ground that the Smith franchise has long since lapsed because of non-user and on the further ground that the Supreme Court has adjudicated that it has no present validity, in a suit brought by the village against the predecessors of said electric company wherein it was decided that said companies had no consent, grant or franchise from the village to use and occupy its streets for the maintenance of their poles and wires and wherein judgment was granted requiring the removal of the same as a nuisance. That judgment has been affirmed. (*Village of Chateaugay* v. *Chasm Power Company*, 227 App. Div. 642; affd., 253 N. Y. ———.) The predecessor of the electric company claimed before the Commission that this judgment was not *res judicata* as to the validity of the Smith franchise and the Commission has apparently so determined. If we may judge by the report of its hearing deputy, the Commission has likewise determined that it has no jurisdiction to declare the Smith franchise invalid for non-user but that such may be determined only by a court of competent jurisdiction in an appropriate legal proceeding.

The situation is somewhat involved and a brief historical review is desirable. In 1899 the village of Chateaugay was getting light service from an electric light company only from dusk until twelve o'clock at night and no electric power. J. O. Smith petitioned the trustees of the village for a franchise to erect an electric light plant and poles and wires in the village and offered to supply all-night service. A resolution was passed, in March, 1899, accepting his proposition and granting the consent of the village. This was the so-called Smith franchise. Smith failed to exercise it and no effort has been made to operate under it for nearly thirty years. In 1902 the Chasm Power Company was incorporated and secured a franchise from the village of Chateaugay to occupy its streets and supply electric light and power in the village. That franchise was limited to a period of twenty years. The Chasm Power Company functioned during that period. The limitation of its franchise was apparently overlooked by the village for a time subsequent to its expiration and finally in 1926 the village authorities discovered it and instead of renewing the franchise to the Chasm Power Company granted a franchise to the Malone Light and Power Company. The latter company petitioned the Public Service Commission for approval of the right to exercise that franchise, which was denied. The village then brought the suit in question here for an injunction restraining the Chasm Power Company and its successors (the predecessors of the present electric company) from maintaining their poles and wires in the streets of the village

on the ground that their franchise had expired. After the commencement of the action an assignment of the Smith franchise was obtained by the Chasm Power Company or its then successor, and on the trial the Smith franchise and the assignment were offered in evidence by the defendants. The court found, at the request of the defendants, that in 1899 the village had granted to Smith permission to erect poles and wires in the streets of the village and that the power company and its successors had succeeded " to all his right, title and interest therein." The court refused, however, the defendants' request to find as a conclusion of law " that the defendant, Chasm Power Company and/or its successors and assigns, have the right to maintain poles, wires and appurtenant fixtures in the streets, highways and other public places of the plaintiff village." Moreover, the court held specifically as a conclusion of law: " That the defendants, Chasm Power Company, Plattsburgh Gas and Electric Company and Eastern New York Electric and Gas Company, Inc., have no consent, grant or franchise from the plaintiff, the village of Chateaugay, to use and occupy the streets and public places of the said village for the maintenance of its poles, wires, fixtures and appliances used in its electric system." Thereupon the Eastern New York Electric and Gas Company, Inc., brought this proceeding before the Public Service Commission for a certificate of necessity or convenience under the Smith franchise and appealed from the judgment requiring it to remove its poles and wires. Since the determination of the Commission granting such authority, this court and the Court of Appeals have affirmed the judgment (227 App. Div. 642; affd., 253 N. Y. 592).

We think that the question raised by the village before the Commission in this proceeding was *res judicata*. The rights of the electric company or its predecessors to maintain its poles and wires in the village under the Smith franchise were litigated and decided in the prior action, wherein the defendants offered such franchise in evidence as an affirmative defense. They relied upon it to prove that they were the owners of a valid consent from the village to occupy its streets, as disclosed by their proposed findings. The essential controversy was whether their poles and wires should be ordered removed by the judgment of a court of equity. If the defendants had any semblance of right under any valid franchise or consent of the village to occupy its streets, equity would require that such right be recognized even though such right might be defeated by a refusal of the Public Service Commission to grant it permission to operate under it. Under the circumstances there could be no presumption that the Commission would withhold its certificate of necessity or convenience. If the Smith

franchise had been found to be a valid and subsisting consent of the village, the court could have refused to decree the injunction which it granted or could have made its judgment dependent upon the action of the Commission. The fact that it was not mentioned in the pleadings and that the assignment of it to the defendants was dated after the commencement of the action was immaterial. It was a matter germane to the issue pleaded and tried. A distinct issue made upon the trial was all that was essential, whether precisely covered by the pleadings or not. (*Frear* v. *Sweet*, 118 N. Y. 454, 458; *Friedman* v. *Isaacs*, 133 Misc. 435, 438.) In an equitable action the rule is different from that in actions at law. " The right to judgment is not limited to the facts as they existed at the commencement of the action, but the relief administered is such as the nature of the case and the facts, as they exist at the close of the litigation, demand." (*Pond* v. *Harwood*, 139 N. Y. 111, 120; *Sherman* v. *Foster*, 158 id. 587, 593; *Peck* v. *Goodberlett*, 109 id. 180, 189; *Bloomquist* v. *Farson*, 222 id. 375, 380.) The conclusion reached must have been that the Smith franchise had no validity or binding effect and had expired because of non-user. The court concluded as a matter of law that the defendants had " no consent, grant or franchise from the plaintiff, the Village of Chateaugay, to use and occupy the streets." The court not only held that there was *no* consent but carefully limited the finding to consent *from the village.* The conclusion is inescapable that the finding had no reference to a lack of certificate of convenience or necessity from the Public Service Commission. The issue was tried and settled. The electric company is estopped to say that it was not an issue. There was nothing to prevent the court from giving judgment upon the merits of that issue, as the electric company's predecessors, by making the issue and requests to find, asked it to do. It is now estopped by that judgment which has been affirmed on appeal. The subject is *res judicata.* (*Lorillard* v. *Clyde*, 122 N. Y. 41; *Williamsburgh Savings Bank* v. *Town of Solon*, 136 id. 465; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Fulton County Gas & Electric Co.* v. *Hudson River Telephone Co.*, 200 N. Y. 287.)

While the question before the Public Service Commission was merely whether a certificate of convenience or necessity should be issued, the Commission was without jurisdiction to issue such certificate if there was no valid and outstanding local consent. The Commission has the power and duty to determine such questions of law and fact as to its jurisdiction before acting. (*Matter of City of Long Beach* v. *Public Service Commission*, 249 N. Y. 480.) It was the duty of the Commission to recognize that the validity of the Smith franchise had been tested and the ultimate fact found

that there was no valid local consent under the Smith franchise or otherwise. It was without jurisdiction to issue a certificate of convenience and necessity and its determination should be annulled.

Further ground for annulment is approved by my associates. I dissent, however, as to that ground. We are reviewing in this proceeding the action of a statutory tribunal which has circumscribed powers. We act, not as a court of equity, but solely to determine whether the Commission has done all that it had the power and duty to do. The authorities hold, as I view them, that the obligation resting on Smith to exercise the franchise within a reasonable time or lose it for non-user was not a condition precedent, but a condition subsequent; and the question whether a franchise shall be determined to be void for non-user or misuser is one to be addressed to a court of competent jurisdiction. (*New York Electric Lines Co.* v. *Empire City Subway Co.*, 235 U. S. 179, 194; *New York Electric Lines Co.* v. *Gaynor*, 218 N. Y. 417; *People* v. *Broadway R. R. Co.*, 126 id. 29, 44.) The Commission did not possess the equitable power to determine that question for itself but could only recognize that it had been determined in the prior action; and on this review we cannot do more than the Commission could do.

The determination should be annulled, with fifty dollars costs and disbursements.

WHITMYER, HILL and HASBROUCK, JJ., concur; DAVIS, J., concurs as to *res judicata*, and on additional ground with an opinion, in which WHITMYER, HILL and HASBROUCK, JJ., concur.

DAVIS, J. (concurring). Agreeing with my brother HINMAN that the question of the " Smith franchise " was litigated and determined in the prior action, I am of the opinion that it would now be adjudged invalid if the question were still open.

The resolution of the village board in March, 1899, constituted an offer to Smith of the right to undertake the project of installing electric lights in the village, as he requested. He had asked for this franchise for the use of a corporation to be later organized for the purpose of engaging in the electric lighting business. This corporation was never organized. No property was ever acquired. No effort was made to put the project into effect. Eventually a similar right was granted by the village to another and used. In other words, the offer made to Smith by resolution was never accepted or acted upon by him or any one in his behalf. It lay inert and forgotten upon the minutes of the village board for nearly thirty years, when this electric corporation obtained assignments from the heirs of Smith of these purported rights. There was no power to revivify it. The rights had never been exercised.

Herein it differed from a right once accepted and used, with property employed and service rendered in some capacity directly or indirectly related to the grant; but afterward having its validity impaired by misuser, suspension or abandonment — with some chance that it might again be revived and with at least vestiges of ownership remaining. In such cases rights once possessed may be declared terminated in an action brought for such purpose. It is necessary to resort to the courts where there is dispute in the facts or where doubts arise concerning legal rights. (*People* v. *Broadway R. R. Co.*, 126 N. Y. 29; *New York Electric Lines Co.* v. *Empire City Subway Co.*, 235 U. S. 179; *New York Electric Lines Co.* v. *Gaynor*, 218 N. Y. 417.) Here there is no dispute in the facts. A judicial determination would only state the admitted facts and the obvious legal conclusion. The " Smith franchise " never came into definite existence. It was only a resolution on paper. There is no affirmative act by Smith or his proposed corporation constituting acceptance, ownership or the employment of property. To give it life there was the duty to perform in some manner the implied obligation to carry on the undertaking to which the resolution related. (*New York Electric Lines Co.* v. *Empire City Subway Co.*, 235 U. S. 179, 193.)

There must be a tangible franchise as a basis for action by the Public Service Commission. (*Matter of City of Long Beach* v. *Public Service Commission*, 249 N. Y. 480.) As this ancient resolution, unaccompanied by definite act of acceptance and use had no legal effect, the Commission was without jurisdiction to grant the order.

WHITMYER, HILL and HASBROUCK, JJ., concur.

Determination annulled, with fifty dollars costs and disbursements.