THE PEOPLE OF THE STATE OF NEW YORK ex rel. VILLAGE OF CHATEAUGAY, Respondent, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent and Appellant, and NEW YORK STATE ELECTRIC AND GAS CORPORATION, Appellant.

(Argued November 17, 1930; decided January 6, 1931.)

*E. B. Naylon* and *Frank Irvine* for New York State Electric and Gas Corporation, appellant. The court did not pass upon the validity or invalidity of the franchise issued to defendant-appellant's assignor. (*Village of Chateaugay* v. *Chasm Power Co.*, 227 App. Div. 643; 253 N. Y. 592; *Cromwell* v. *County of Sac*, 94 U. S. 351; *United States* v. *Mitchell*, 271 U. S. 9; *Webster* v. *Fall*, 266 U. S. 507; *Matter of Public Nat. Bank*, 278 U. S. 101; *New* v. *Oklahoma*, 195 U. S. 252; *Matter of Lyman*, 160 N. Y. 96; 161. N. Y. 119.) The franchise issued to defendant-appellant's assignor is a valid existing franchise. (*New York Electric Lines* v. *Empire Subway Co.*, 235 U. S. 179; *New York Electric Lines* v. *Gaynor*, 218 N. Y. 417; *Hagerla* v. *Mississippi Co.*, 202 Fed. Rep. 776; *People* v. *Broadway R. R. Co.*, 126 N. Y. 29; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574; *Vroom* v. *Tilly*, 184 N. Y. 168; *First Construction Co.* v. *State of New York*, 221 N. Y. 295; *People* v. *O'Brien*, 111 N. Y. 1.)

*Patrick J. Tierney* and *Thomas J. Fitzpatrick* for Village of Chateaugay, respondent. The Public Service Commission had no jurisdiction to grant permission and approval to defendant-appellant because there is no valid outstanding consent by the respondent. (*Matter of City of Long Beach* v. *Public Service Comm*, 249 N. Y. 480; *New York, O. & W. Ry. Co.* v. *Griffin*, 235 N. Y. 174.) The franchise issued to defendant-appellant's assignor having lapsed, is invalid. (*New York* v. *Bryan*, 196 N. Y. 164; *Trustees of Southampton* v. *Jessup*, 162 N. Y. 122; *Wheeling* v. *Chesepeake Tel. Co.*, 95 S. E. Rep. 653; *People* v. *Broadway Ry. Co.*, 126 N. Y. 29; *First Const. Co.* v. *New York*, 221 N. Y. 295; *Vroom* v. *Tilly*, 184 N. Y. 168.) The question before the Commission in this proceeding was *res adjudicata.* (*Village of Chateaugay* v. *Chasm Power Co.*, 227 App. Div. 642; 253 N. Y. 592; *Barber* v. *Kendall*, 158 N. Y. 401; *Pray* v. *Hageman*, 98 N. Y. 351;

*Smith* v. *Smith,* 79 N. Y. 634; *Frear* v. *Sweet,* 118 N. Y. 454.)

CARDOZO, Ch. J. On the petition of the Eastern New York Electric and Gas Company, the Public Service Commission on March 14, 1929, made an order approving the construction by the petitioner of an electric plant for furnishing to the public electricity for light, heat and power in the village of Chateaugay, Franklin county, and permitting and approving the exercise of the rights and privileges conferred by a franchise which had been granted by the Board of Trustees of the village to J. O. Smith, the petitioner's assignor, on March 28, 1899.

The village of Chateaugay, which had opposed the granting of the certificate, sued out an order of certiorari to review the order of the Commission as well as a later order denying a rehearing.

The New York State Electric and Gas Corporation, the successor to the Eastern New York Electric and Gas Company, intervened by leave of court as a party to the proceeding.

The Appellate Division upon the return to the order of certiorari annulled the determination of the Commission upon two grounds: *First,* that by a judgment in a former action between the village and the lighting company it had been adjudged that the so-called Smith franchise was non-existent and void; and *second,* that irrespective of the effect of the former adjudication, the franchise was without validity for non-acceptance and non-user.

Upon this appeal by the lighting company the two objections to the franchise will be considered in succession.

(1) We are unable to yield assent to the conclusion of the court below that the invalidity of the Smith franchise is *res judicata.*

In 1902 the village of Chateaugay granted to a corporation, the Chasm Power Company, a franchise to occupy the streets and supply electric light and power for a period of twenty years. Upon the expiration of the

twenty years (in 1922), the limitation of time was apparently overlooked, and the power company continued to serve the village and the public as it had done those many years before. The limitation was remembered in 1925, and thereupon the village, instead of renewing or continuing the franchise in favor of the company in possession, declared it at an end and attempted to confer it on another. A lawsuit promptly followed. The village brought suit against the Chasm Power Company in August, 1926, to enjoin the continued occupation of the streets and public places by the poles and other fixtures. The power company answered pleading acquiescence and estoppel. During the pendency of the action the rights, if any, of the power company were assigned to the Eastern New York Gas and Electric Company, which was joined as a defendant. The suit resulted in a judgment in favor of the village enjoining the continued occupation of the streets and public places, which judgment was affirmed by the Appellate Division (227 App. Div. 642) and later by this court (253 N. Y. 592).

Before the grant of any franchise to the Chasm Power Company, one J. O. Smith had applied to the Board of Trustees of the village for a franchise permitting him or his assigns to place poles and other lighting appliances in the streets of the village for the purpose of supplying electric light under the name of the High Falls Electric Light and Power Company. On March 27, 1899, the Board of Trustees adopted a resolution granting the petition. Incorporated in the resolution was a written promise signed by Smith, dated the same day, whereby he undertook in consideration of the granting of the franchise to supply light to the village for its streets and public buildings at designated rates. The Board of Trustees, in the resolution granting the petition, accepted this offer, and by implication, if not expressly, promised on its part to make payment for the service.

Nothing was done by Smith under the contract so made

or the franchise so conferred. No plant was ever acquired by him, and no poles or wires were ever built or strung. After his death, however, his executors assigned his rights and interests in and under the franchise to the Eastern New York Electric and Gas Company. This assignment was made in November, 1927, while the suit by the village against the power company was still undetermined.

No issue in respect of the Smith franchise or of the rights of an assignee thereunder was tendered by the pleadings, in the suit by the village. Indeed, when the suit was begun, the Chasm Power Company, which had never acquired Smith's interest in the franchise, was still the sole defendant. The wrong charged in the complaint was the continued occupation of the streets after the time limit had expired. The justification pleaded in the answer was acquiescence and estoppel. Upon those issues the parties went to trial, the power company's assignee being then joined as a defendant. In the course of the trial, without suggestion of a purpose to broaden the issues as defined by the pleadings, the defendants put in evidence the Smith franchise and the assignment. At that time (November, 1928) the Public Service Commission had not yet issued a certificate of permission and approval. Plainly, therefore, the Smith franchise, apart from any objection of non-acceptance or non-user, could not avail to confer upon the defendants a present right of occupation (Public Service Commission Law; Cons. Laws, ch. 48, § 68). The defendants in offering it in evidence, did not state the purpose of the offer, but they must have understood that in the absence of a certificate the privilege that it conferred was at best imperfect and potential. When the case was in this court (253 N. Y. 592), they disavowed any notion either then or at any time that a privilege so inchoate was evidence of a subsisting right. The object of the offer was stated to be this, that the remedy of an injunction being discretionary, the acquisition of the Smith franchise, though not justifying occupa-

tion in default of approval by the Commission, might be deemed to be a circumstance affecting in some measure the exercise of discretion.

When the case was submitted to the trial judge, the defendants proposed 74 findings of fact and 9 conclusions of law. Two of the proposed findings of fact set forth the resolution of the village granting the franchise to Smith and the assignment by Smith's executors. None of the conclusions of law proposed any ruling in respect of its validity. Whatever validity it had was treated, apparently, as inchoate and uncertain, for the action of the Commission was still unknown and problematical. At most there was a suggestion of a circumstance that might supply a reason for delay.

On the side of the plaintiff village, there was equally no thought that the validity of the assignment to Smith and his assigns was an issue to be determined. The decision of the trial judge, which embodies presumably the findings proposed by the successful party, does not mention the Smith franchise at all. No finding was proposed that there had been a failure to accept it or a failure to use it. No conclusion was proposed that its vitality had been sapped by inaction or abandonment. There is indeed a conclusion of law that the defendants " have no consent, grant or franchise from the plaintiff, the Village of Chateaugay, to occupy the streets and public places of the Village." This conclusion, classified as one of law, is not a determination of new issues, unrelated to the pleadings. It is precisely what it professes to be, a deduction of law from the facts already found. The meaning is no more than this, that the franchise to the power company, the only franchise mentioned in the decision, has been terminated through lapse of time, and that the acts relied upon by the defendants in support of their defenses of acquiescence and estoppel are unavailing to preserve it.

The burden is on a litigant who claims the benefit of a

former judgment as *res judicata* to prove that the *res* to be thus established by estoppel was either involved by implication or actually determined in the former litigation (*Rudd* v. *Cornell*, 171 N. Y. 114, 127; *Silberstein* v. *Silberstein*, 218 N. Y. 525, 528; *Mehlhop* v. *Central Union Trust Co.*, 235 N. Y. 102; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304). Presumably the issues involved or determined are those pertinent to the subject of the controversy as defined by the pleadings (*Silberstein* v. *Silberstein, supra; Pray* v. *Hegeman*, 98 N. Y. 351, 358). If, adhering to that presumption, we look to the pleadings in the former litigation, we find that a franchise distinct altogether from the one to Smith and his assigns was the subject of the controversy. The test of the pleadings and their implications, however, is not final and exclusive. The course of the trial or the form of the decision may show that the pleadings were abandoned, and that controversies beyond them were determined after trial (*Silberstein* v. *Silberstein, supra*). This extension of the pleadings is not to be presumed. The burden of proving it is on the party asserting the estoppel. We think the burden is not sustained upon the record now before us. The record does not show in any clear or satisfactory way that the defendants in the former action understood that they were litigating the question whether the franchise to Smith and his assigns, which by concession was still inchoate for want of the approval of the Commission, had been abandoned or forfeited through non-acceptance or nonuser, with the result that approval, if obtained, would be vain and ineffective. The record does not show that the trial judge, disregarding the pleadings, determined that question, or considered it at all. Certain it is also that no such question was considered when the case was in this court (253 N. Y. 592). We think it is still open, unaffected by the former judgment.

(2) The former judgment not availing as a bar or an

estoppel, we have yet to determine whether the approval of the Commission is invalid because of failure of proof of a franchise presently existing.

Public Service Commission Law, section 68, provides: " No gas corporation or electric corporation shall begin construction of a gas plant or electric plant without first having obtained the permission and approval of the commission. No such corporation shall exercise any right or privilege under any franchise hereafter granted or under any franchise heretofore granted, but not heretofore actually exercised, or the exercise of which shall have been suspended for more than one year, without first having obtained the permission and approval of the commission. Before such certificate shall be issued a certified copy of the charter of such corporation shall be filed in the office of the commission, together with a verified statement of the president and secretary of the corporation, showing that it has received the required consent of the proper municipal authorities."

Under this statute a consent presently operative that the petitioner occupy the highway is a condition precedent to a certificate of approval. The existence of such a consent is a fact to be proved to the Commission just as much as any other fact conditioning its action (*Matter of City of Long Beach* v. *Public Service Comm.*, 249 N. Y. 480). The petitioner could not rid itself of the burden thus imposed by proving a consent lawful when given, but later lawfully revoked. The revocation, if lawful, puts the consent out of existence as effectively as if a franchise for a definite term had expired by limitation. A prop essential to approval is withdrawn, and the petition collapses with it.

We think a lawful revocation, terminating the franchise, has been established by the village. The rule is now settled that the municipal authorities consenting to a franchise for the occupation of the public streets, may revoke the consent for nonuser of the privilege (*New York*

*Electric Lines Co.* v. *Empire City Subway Co.*, 235 U. S. 179, 194; *New York Electric Lines* v. *Gaynor*, 218 N. Y. 417; *Village of Stillwater* v. *Hudson Valley Ry. Co.*, 255 N. Y. 144). The revocation, if based upon sufficient grounds, is effective, without previous adjudication, from the time it is declared, just as it would be effective in like circumstances to terminate a private grant. In the one case as in the other the declaration is not conclusive. The adequacy of the cause, if contested by the holder of the grant, must be considered and determined. Even so, the determination, when made, is not the operative act that extinguishes the grant; it is merely the approval and registration of an election previously declared. " The resolution in such case serves to define the attitude of the public authorities, and to revoke the permission where sufficient ground exists for such revocation" (*New York Electric Lines Co.* v. *Empire City Subway Co.*, *supra* at 195).

Sufficient grounds there plainly were for the recall of this consent. For nearly thirty years nothing had been done by Smith or his assigns either in the fulfillment of the lighting contract with the village or in the use of the franchise that had been given in aid of its performance. Then, with Smith in his grave, a lighting corporation unearths the stale grant, so long neglected and forgotten, and makes proof of an assignment obtained from the executors, to continue an occupation that had been declared to be illegal. The evidence of abandonment could hardly have been clearer if the petitioner had come forward after inaction for a century.

The argument is made that revocation, even if permissible, had not been adequately declared when the Commission certified approval, and that in the absence of revocation the franchise still subsisted. The facts, we think, are to the contrary. A resolution terminating a franchise for breach of a condition, is not required to

follow a particular form. There is no need to use the word
" revoke " or any other term of art. All that is needed
is that the election be so expressed as to make intention
reasonably apparent when words are interpreted in the
setting of the circumstances. The test was fully met.
As soon as the application for a certificate was made to
the Commission, the Board of Trustees adopted a reso-
lution directing counsel for the village to oppose the
granting of the petition. Following this resolution the
village served an answer, verified by the Mayor, in which
it denied that the petitioner or its predecessors in title
had any privilege or franchise to occupy the village
streets under the resolution of the Board passed in March,
1899, or by any other consent or grant. This could only
mean, in the setting of the circumstances, that the franchise
of March, 1899, was no longer in existence. Upon the
hearing before the Commission, counsel for the village
stated as one of the grounds of opposition that there had
been a forfeiture of the consent by reason of nonuser.
No objection was made, so far as the record now informs
us, that the form of the resolution was insufficient to
establish revocation. The petition for rehearing gave
notice to the Commission that within a fortnight following
its certificate another resolution, revoking the consent
with all possible formality, had been spread upon the
records. Even if we disregard the later resolution on the
ground that a petition for a rehearing invokes the exercise
of discretion (*People ex rel. New York & Queens Gas Co.*
v. *Straus*, 182 App. Div. 666; Public Service Commission
Law, § 72), we think what had been done already was a
disclosure of an election too plain to be misread.

In what has been written we have assumed in favor
of the appellant that the nonuser of the franchise is the
breach of a condition subsequent, with the result that
the privilege survives until revoked. Such is commonly
the effect (*New York Electric Lines Co.* v. *Empire City
Subway, Co. supra*). The nature of the condition, whether

precedent or subsequent, is, however, a question of intention, dependent for its solution upon the terms of the enabling statute and the language of the grant (*Vroom* v. *Tilly*, 184 N. Y. 168). We are not required to determine whether this particular franchise is so connected with a contract for the lighting of the streets and public buildings (Village Law; Cons. Laws, ch. 64 § 240) that failure to act thereunder within a reasonable time is a breach of a condition precedent or at least of one concurrent. We leave that question open.

The order should be affirmed with costs.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Order affirmed.