In the Matter of the Application of PUBLIC SERVICE INTERSTATE TRANSPORTATION Co., INC., Petitioner, for a Certiorari Order against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, STATE DIVISION, Respondent.

TAPPAN AND NYACK BUS, INC., Intervenor, Respondent.*

Third Department, December 1, 1932.

*Ernest W. Hofstatter* [*Charles L. Craig* of counsel], for the petitioner.

*Charles G. Blakeslee* [*Melvin L. Krulewitch* of counsel], for the respondent Public Service Commission, State Division.

*B. Meredith Langstaff* [*Colley E. Williams* of counsel], for the intervenor Tappan and Nyack Bus, Inc.

HILL, J. The consent of the local authorities to the operation of buses along the highways, coupled with the certificates of convenience and necessity issued by the Public Service Commission, constitutes a grant of a special franchise. (*Matter of City of Long Beach* v. *P. S. Comm.*, 249 N. Y. 480, 492.) The consents and certificates were given and the order revoking the special fran-

---

chise thus granted was made before the enactment of article 3-A of the Public Service Law (as added by Laws of 1931, chap. 531), under the statute which was then known as the Public Service Commission Law. Petitioner was operating its buses under the franchise at the time the order of revocation was made. Under such conditions, the Public Service Commission was without authority to revoke. (*People ex rel. Luckings* v. *Railroad Comrs.*, 30 App. Div. 69; affd., 156 N. Y. 693.) The franchise was property of which the holder could not be deprived without due process. (*People ex rel. City of New York* v. *N. Y. R. Co.*, 217 N. Y. 310; *Lord* v. *Equitable Life Assurance Society*, 194 id. 212; *City of Buffalo* v. *Chadeayne*, 134 id. 163.)

The determination should be annulled and proceedings dismissed, with fifty dollars costs and disbursements.

VAN KIRK, P. J., and McNAMEE, J., concur; RHODES, J., dissents, with an opinion, in which HINMAN, J., concurs.

RHODES, J. (dissenting). The Public Service Commission has revoked the certificates of convenience and necessity granted heretofore to the petitioner herein, and such petitioner now challenges the right of the Commission to revoke, upon the ground that the powers delegated to it by the Legislature contain neither express nor implied authority so to do.

Certificates of convenience and necessity were heretofore granted by the Commission to predecessors of petitioner, the transfers to petitioner being by consent of the Commission. Each of the certificates, including the consents to the transfer of the franchises, was made upon conditions set forth therein, which, among other things, were to the effect that the same should not be leased or assigned without the consent of the Commission, and that the Commission might revoke in case of failure to operate, or for other sufficient cause.

The orders of revocation were made because of non-compliance of the petitioner with the conditions of the grant.

For the purpose of this discussion it may be stated that the Commission had before it sufficient evidence upon which to base its determination and we, therefore, address ourselves to the proposition as to whether the law vests in the Commission authority to revoke the franchises in question.

There is attached to every franchise granted to a common carrier the condition, sometimes expressed, but always implied, that the carrier will provide adequate transportation. This is the primary purpose for which it exists and for which it receives permission to occupy the highways. Bus lines are permitted to commercialize

these highways, which are not their property, in consideration for the benefit derived by the public from adequate transportation facilities. If without paying for the privilege the bus lines are allowed to use these properties, built and maintained by the people, and through indifference, neglect or refusal, fail to live up to the obligation imposed of furnishing adequate transportation, the public suffers an injustice thereby. The rights of the people should be as zealously safeguarded as those of the corporation, and the carrier should not be permitted to reap the benefits of its bargain where it fails to perform its part of the compact. The present over-burdening and over-crowding of highways are serious practical matters and should not be permitted to be aggravated by unlawful use.

It is firmly established by the decisions of this State that a municipality having authority to grant to a common carrier the right to use its streets, by implication has power and authority to grant the consent upon such terms and conditions as it may choose to impose. (*People* v. *O'Brien*, 111 N. Y. 1; *Public Service Comm.* v. *Westchester St. R. R. Co.*, 206 id. 209; *People ex rel. W. S. St. R. Co.* v. *Barnard*, 110 id. 548; *Matter of New York Electric Lines Co.*, 201 id. 321; *Village of Stillwater* v. *Hudson Valley R. Co.*, 255 id. 144.)

It is also established that the municipality having the power to impose conditions in consideration of its consent, may revoke such consent for a breach of condition, or for nonuser or misuser. (*Matter of New York Electric Lines Co., supra; People ex rel. Village of Chateaugay* v. *Public Service Commission*, 255 N. Y. 232.)

If municipalities have implied power to attach conditions to their grants of franchises, and power to revoke for condition broken, with greater force the principle must apply to the Public Service Commission. By section 5 of the Public Service Law it is provided that " the jurisdiction, supervision, powers and duties of the Public Service Commission shall extend * * * to common carriers * * * and stage or omnibus lines or routes." (See, also, *City of Troy* v. *United Traction Co.*, 202 N. Y. 333.)

In *People ex rel. Village of Chateaugay* v. *Public Service Commission* (*supra*) the court said: " The rule is now settled that the municipal authorities consenting to a franchise for the occupation of the public streets, may revoke the consent for nonuser of the privilege. * * * The revocation, if based upon sufficient grounds, is effective, without previous adjudication, from the time it is declared, just as it would be effective in like cicrumstances to terminate a private grant. In the one case as in the other the declaration is not conclusive. The adequacy of the cause, if

contested by the holder of the grant, must be considered and determined. Even so, the determination, when made, is not the operative act that extinguishes the grant; it is merely the approval and registration of an election previously declared. 'The resolution in such case serves to define the attitude of the public authorities, and to revoke the permission where sufficient ground exists for such revocation.'"

The order of the Commission here under review does not impair in any way the corporate charter. A grant of incorporation is a compact between the sovereign and a number of persons. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518.) Ordinarily the revocation of a corporate charter is brought about by an action of the People of the State through the Attorney-General. (*Village of Stillwater* v. *Hudson Valley R. Co.*, *supra*.) The grant of a franchise or right to use the highways can be derived only from the sovereign. The grant of the certificate of consent of the Commission authorizing the petitioner to use the highways is, by virtue of authority or power, delegated by the sovereign. (*City of New York* v. *Bryan*, 196 N. Y. 159; *Beekman* v. *Third Ave. R. R. Co.*, 153 id. 144.)

In *Village of Stillwater* v. *Hudson Valley R. Co.* (*supra*) the court said: "The secondary franchise, which in these cases is the consent or permission given by local authorities for the use of its streets or highways, is not the franchise by and under which the corporation exists and has the right to function as a corporate being. To destroy or take away this latter franchise it may be necessary to resort to an action by the People of the State through the Attorney-General. * * * This is not such a case, as we are dealing here with the consent of a village granted to the Hudson Valley Railway Company to use its streets upon terms and conditions which it now fails and refuses to meet. The consent is at an end, and the tracks of the railroad company in the street are there without authority, and constitute a trespass or a public nuisance. They must be taken up."

In *New York Electric Lines Co.* v. *Empire City Subway Co.* (235 U. S. 179) the court said: "Whether in such cases, where there has been a municipal permission for use of streets, the State shall proceed directly by quo warranto, or whether it shall authorize the municipality to pass a resolution or ordinance of repeal or revocation, leaving the propriety of its course to be determined in an appropriate legal proceeding in which the default of the grantee may be adjudicated, is a question of State law with which we are not concerned."

In the case at bar it appears that petitioner entered into an

operating agreement with a foreign corporation organized under the laws of New Jersey, by which the New Jersey corporation took over the operation of petitioner's route without permission or consent of the Commission herein. The Commission held that petitioner had ceased to operate. (See *Matter of Public Service Interstate Transp. Co.* v. *Public Service Comm.*, 258 N. Y. 455.)

In *Matter of Brooklyn, Winfield & Newtown R. Co.* (81 N. Y. 69) the statute required that a railroad company should begin construction of its road and expend thereon ten per cent of its capital stock within five years after incorporation. The railroad company there in question leased a portion of its route to another corporation which was covered by its franchise, and claimed thereby that it was operating under such franchise. It was held that such leasing was not such an operation as was required by the statute and that it could not be construed into such a user of the franchise by the corporation as was contemplated by the statute.

Petitioner also claims that the Commission had no authority to grant a rehearing herein. Section 22 of the Public Service Commission Law, as then in force, provided for a rehearing but did not fix the time within which application therefor should be made, although the same section of the Public Service Law (as amd. by Laws of 1930, chaps. 782, 789), as it now exists, requires application for rehearing to be made within thirty days. Petitioner argues, however, that by section 20 of the Public Service Commission Law, then in force, it was provided that all hearings before the Commission should be governed by rules to be adopted and prescribed by the Commission and that rule 2, subdivision 6, of the rules adopted by the Commission, relating to a rehearing, then required that a petition for a rehearing should be filed in the office of the Commission at Albany within thirty days after service of a final order in the case. This application for revocation was made to the Commission under the title of the original proceedings in which the certificates were granted, and several years after the granting of such certificates; but this is not a rehearing of the nature contemplated by the statute and rules. Such rehearings contemplate that after an order has been granted, if a party in interest feels that it was improperly granted or that another or different order should have been made, such party may ask for a review of the facts and present additional facts showing that the determination of the case should have been otherwise. Under the proceeding for the revocation of the consents no claim was made that the original orders and certificates were improperly granted. The Commission was requested to revoke the orders and consents because conditions therein contained had been broken as established by facts

accruing after the granting thereof. The holder of the certificates by acts subsequent had violated the conditions of the orders under which it was permitted to operate and was, therefore, no longer entitled to permission to operate. No attempt has been made to destroy the force and effect of the original orders, but the proceeding for revocation was in accordance with, pursuant to and in recognition of the validity of the terms and conditions contained in them.

If the foregoing reasons be sound, then it follows that the Commission had authority to impose conditions to the consents granted by it and also had authority to make an order revoking such consents for breach of conditions.

The determination should be confirmed, with fifty dollars costs and disbursements.

HINMAN, J., concurs.

Determination of Public Service Commission revoking certificates of convenience and necessity annulled, and proceedings dismissed, with fifty dollars costs and disbursements.